### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT L. HAIR<br><br>   Petitioner,<br><br>  v.<br><br>JOHN ALVES<br><br>   Respondent. | No. 3:10-cv-01948 (MPS) |

### <u>MEMORANDUM OF DECISION</u>

   The petitioner, Robert L. Hair, is an inmate confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut. He brings this action for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction for murder. The petitioner argues that the Connecticut Superior Court made an unreasonable determination of the facts and an objectively unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), in determining that his original trial attorney, David Abbamonte, had not rendered ineffective assistance of counsel. (*See* ECF No. 18 at 2–6.) The petitioner claims that original trial counsel failed (1) to advise the petitioner to testify in support of the asserted claim of self-defense, and (2) to "highlight or otherwise mention" evidence from the victim's post-mortem report that is "facially inconsistent with the trial testimony offered by the State's eyewitness to the shooting" during the cross-examination of the eyewitness. (*Id.*)

   On May 12, 2015, the Court ordered the respondent, John Alves, to show cause why the relief prayed for in the Amended Petition should not be granted. (ECF No. 20.) The respondent now moves to dismiss, or in the alternative opposes, the petitioner's Amended Petition on two grounds. (ECF No. 21 at 5.) For the reasons discussed below, Hair's petition will be denied.

## BACKGROUND

The following facts are drawn from the Amended Petition for a Writ of Habeas Corpus, the filings attached to the respondent's Motion to Dismiss, the petitioner's Response, and the underlying state judgments.

## I.      The Crime

On March 6, 1999, the petitioner shot and killed Shawn Jefferies. *State v. Hair*, 68 Conn. App. 695, 697–98 (2002). The two had an altercation earlier that day when Jefferies pushed the petitioner into a utility box. *Id.* When Jefferies went into his apartment after the dispute, Ebony Harper, Jeffries' fiancée, went outside to ask Hair why Jefferies was upset. *Id.* The petitioner then shot Jefferies twice when Jefferies came outside. *Id.* Three days later, the petitioner told police that Jefferies had a gun, and that the shooting was in self-defense. (ECF No. 29-1 at 2.)

## II.     The Trial

The petitioner proceeded with his self-defense claim at trial. Ebony Harper testified that she saw the petitioner shoot Jefferies. (ECF No. 29-5 at 196; ECF No. 29-6 at 197.) A medical examiner testified that the victim was shot twice. (ECF No. 29-5 at 65–67.) The jury also saw the petitioner's police statement in which he admitted to shooting at the victim. (*Id.* at 117–122.) To support the claim of self-defense, the petitioner's counsel relied on two pieces of evidence: the testimony of Tamara Dyce and the petitioner's statement to the police. (*Id.* at 118; ECF No. 29-6 at 250.) Tamara Dyce testified that the victim left his apartment with a gun, although she did not see the actual shooting or whether the victim had pulled out a gun. (ECF No. 29-6 at 258–59.) In the petitioner's statement to the police, he said that he shot the victim in self-defense because he was scared for his life. (ECF No. 29-1 at 2.) In it, the petitioner described how he and the victim had numerous arguments in the past, that the victim "always told [him] that he was going to shoot" him, that the victim "would always keep his hands in his pockets like he had a gun," and

that on the evening of the shooting, the petitioner could see that the victim had a "black gun . . . [that] was either black or dark gray or blue steel." (*Id.*) The petitioner did not testify at the trial.

After receiving a note from the jury asking for clarification on the law of self-defense, the state trial court re-instructed the jury. (ECF No. 29-6 at 332–38.) The jury found the petitioner guilty of murder and criminal possession of a firearm in violation of Connecticut General Statutes §§ 53a-54a, 53a-217c. (ECF No. 29-8 at 3.) He was then sentenced to a prison term of forty-five years. (ECF No. 23-2 at 15.)

## III.   The Direct Appeal

On direct appeal, the Connecticut Appellate Court affirmed the murder charge but reversed the conviction for criminal possession of a firearm. *State v. Hair*, 68 Conn. App. 695 (2002). A petition for certification to the Connecticut Supreme Court was denied. *State v. Hair*, 260 Conn. 925 (2002).

## IV.   Postconviction Proceedings

In his first state habeas proceeding, the petitioner argued that his original trial counsel had rendered ineffective assistance by failing, among other things, to cross-examine adequately the State's witnesses and to advise the petitioner to testify at his criminal trial. (ECF No. 29-4 at 1–5.) Had the petitioner testified at his criminal trial, he would have told the jury that the victim had threatened him shortly before the day of the shooting and that the victim had emerged from behind a van with a gun aimed at the petitioner at the time of the shooting. (ECF No. 29-9 at 25–26, 49–50.)

The petitioner's original trial counsel, David Abbamonte, testified at length at the habeas trial. According to Abbamonte, he and the petitioner "thought [they] had a good case because of [the petitioner's] statement to the police and also Tamara Dyce's testimony." (ECF No. 29-8 at 25.) The statement to the police was used to show that the petitioner was afraid of the victim who

3

"was a violent guy and had threatened" the petitioner. (*See id.* at 32.) Abbamonte explained that

Dyce's testimony was used to show that the victim had a gun at the time of the shooting. (*Id.* at

33.) The two discussed whether the petitioner would testify and agreed that the petitioner would

not testify.[1] (*Id.* at 25, 51.) Abbamonte said: "[The petitioner] didn't want to testify and I didn't

try to talk him out of it because I thought we had a good self-defense case the way it was . . . ."

(*Id.* at 52.) When pressed by petitioner's habeas counsel about whether it was "important to have

Mr. Hair testify as to his imminent fear of Mr. Jeffries using deadly force against him and lack of

an ability to safely retreat from the situation at the time of the shooting," Abbamonte replied:

> Well, specifically what you just mentioned about the retreating, I mean,
> [the petitioner] was out there waiting for the guy . . . . I didn't want to get
> involved in that. That's one of the reasons why I didn't try to force him to take the
> stand and he didn't want to take the stand. He certainly had plenty of opportunity
> to retreat. The problem was that he went for his gun and came back . . . . But in
> his [police] statement there's also evidence that he was afraid of the victim . . . .
> [The petitioner] thought [the victim] had a gun. That was more than enough. . . .
> [T]his wasn't a situation where he couldn't have backed away. So, all in all, . . .
> putting Mr. Hair on the stand, even if he wanted to take the stand, which he
> didn't, . . . [would have allowed] himself to be cross-examined about . . . why
> didn't he run and why did he wait for him . . . .

(*Id.* at 52–53.)

The state habeas court found that the petitioner was not denied effective assistance of

counsel. (*Id.* at 66–67, 73.) The court found that Abbamonte "was successful in raising the issue

---

[1] At the habeas trial, the petitioner testified that he had wanted to testify at his criminal trial but
that his lawyer, not the petitioner, had made the decision that he not testify. (ECF No. 29-9 at 7–
8.) The petitioner does not raise an argument in his petition that his trial counsel improperly
usurped his authority to decide whether or not to testify. (ECF No. 18 at 3); *see* Conn. Rules of
Prof'l Conduct R. 1.2(a) ("In a criminal case, the lawyer shall abide by the client's decision, after
consultation with the lawyer . . . whether the client will testify."). Rather, the petitioner argues
that his original trial counsel failed "*to advise* the Petitioner to testify in support of the asserted
claim of self-defense." (ECF No. 18 at 3 (emphasis added).) Further, the state habeas court
apparently did not find the petitioner credible and found that the petitioner had made the decision
not to testify. (ECF No. 29-10 at 73 ("The Court also finds the decision not to testify was made
by Mr. Hair.").) The petitioner does not challenge that factual finding here.

of self-defense," even though a jury ultimately did not find for his client, because he adequately cross-examined witnesses, addressed the evidence in favor of his client, and was able to present enough evidence for the original trial court to instruct the jury on self-defense. (*Id.* at 67, 70–73.)

The state habeas court noted that the "most problematic" aspect of the petitioner's case was the autopsy report of the victim, (*id.* at 70–71), which the petitioner claims his counsel failed "to highlight or otherwise mention," (ECF No. 18 at 5). The state habeas court reasoned that it was proper not to emphasize the report because the report was damaging to the petitioner's claim of self-defense. The court noted that the report showed that the victim was shot twice, once in the back and once in the front. (ECF No. 29-10 at 71.) The report did not state whether the shot to the back was the first or second shot fired. (*Id.*) The court reasoned that even if the first shot was to the front of the victim and spun the victim around, the petitioner's ability to retreat at that time would have meant that the second shot, which was fatal, was not made in self-defense. (*Id.*) Alternatively, the court said that if the first shot fired was to the back, then the fact that the victim was moving away from the petitioner would make "the argument of self-defense . . . extraordinarily weak." (*Id.* at 71–72.)

The state habeas court also discussed whether it was ineffective assistance of counsel to recommend that the petitioner not testify. (*Id.* at 73.) The court reasoned that the "tactical recommendation [not to testify] makes a great deal of sense." (*Id.*) The court explained that the petitioner's testimony would have subjected him to cross-examination resulting in his criminal record, which included a conviction for forgery, being raised before the jury as they considered

the petitioner's credibility.[2] (*See id.*) Further, the court concluded that the "downside of Mr. Hair testifying was significantly greater than any benefit to be obtained by him testifying" because "[a]ny benefit that Mr. Hair could obtain was available through the use of the statement, [*i.e.*, the statement to the police,] that did come into evidence at the trial." (*Id.*)

The Connecticut Appellate Court dismissed the petitioner's appeal, *Hair v. Comm'r of Corr.*, 98 Conn. App. 903 (2006), and the Connecticut Supreme Court denied a petition for certification, *Hair v. Comm'r of Corr.*, 281 Conn. 909 (2007).[3]

## DISCUSSION

The respondent moves to dismiss the petitioner's claim of ineffective assistance of counsel on the ground that it is not cognizable because it involves an interpretation of state law concerning self-defense.[4] (ECF No. 21 at 5.) The respondent also opposes the petition on the

---

[2] The jury learned of Hair's forgery conviction in any event because the parties stipulated to it as the predicate for the criminal possession of a firearm charge. (ECF No. 29-5 at 6–7.) The trial court gave a limiting instruction to the jury to consider the forgery solely to establish an element of criminal possession of a firearm. (ECF No. 29-6 at 328.)

[3] The petitioner then filed a second state habeas action to claim that his original appellate attorney rendered ineffective assistance of counsel. (ECF 23-12 at 7.) While that action was pending, the petitioner filed a third state habeas action. (ECF No. 23-13 at 3.) The petitioner withdrew the second action. (ECF 23-12 at 10.) The Superior Court denied the third habeas petition, which petitioner did not appeal. (See ECF No. 23-13 at 16.) The petitioner then filed this action under 28 U.S.C. § 2254, in which he raised both exhausted and unexhausted claims. (ECF No. 1.) After the petitioner filed a fourth state court habeas action, which was ultimately withdrawn, this Court dismissed this action without prejudice, pending exhaustion of the petitioner's state remedies. (ECF No. 15.) The petitioner's initial Motion to Reopen was denied because the petitioner continued to bring unexhausted claims. (ECF No. 17.) The petitioner's later Motion to Reopen was granted because he dropped his unexhausted claims. (See ECF No. 20.)

[4] The Rules Governing Section 2254 Cases in the United States District Courts permit the government to file a motion to dismiss. *See* Rule 4, Rules Governing Section 2254 Cases in the United States District Courts, advisory committee's note ("The Rule was modified slightly to reflect the view of some commentators that it is common practice in some districts for the government to file a pre-answer motion to dismiss.").

ground that the state courts did not unreasonably apply "clearly established" federal law to the facts of this case. (*Id.*)

**I.      The Petitioner's Claim is Cognizable.**

The respondent's first argument is that the petitioner's claim is not cognizable because it involves an interpretation of state law. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). *See also* 28 U.S.C. § 2254(a) (permitting "an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution, laws, or treaties of the United States.") "A claim that a state conviction was obtained in violation of state law is not cognizable in federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle*, 502 U.S. at 68).

Here, the issue is whether adjudicating a claim of constitutionally deficient representation based on trial counsel's failure to advise his client to testify and failure to "highlight" other evidence allegedly supporting a self-defense claim requires this Court to "reexamine state-court determinations on state-law questions." *See Estelle*, 502 U.S. at 67–68. While the respondent raises this issue in his motion, he offers little analysis, other than to assert that the resolution of a claim of an alleged failure to present a defense of self-defense under state law requires this Court to reexamine state court determinations of state law—an exercise prohibited on federal habeas review. (ECF No. 26 at 5–6.) *See also Estelle*, 502 U.S. at 67–68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). This assertion is simply incorrect. As shown below, determining whether Hair's trial counsel was constitutionally deficient requires examining decisions by trial counsel as to how to present the defense of self-defense rather than decisions by the state court judge about the legal contours of

that defense under state law. Thus, the petitioner's claim that his original trial counsel did not provide him effective assistance is cognizable.

## II.     The State Court Reasonably Applied "Clearly Established" Federal Law.

The respondent's second ground for denying the petition is that "the state courts did not unreasonably apply 'clearly established' Federal Law to the facts of this case." (ECF No. 26 at 5.) When a claim has been rejected on the merits by a state court, a federal court cannot grant a petition for the writ unless the state court adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The parties here do not dispute that the state court decision was adjudicated "on the merits," which is a prerequisite to applying this standard. *Howard v. Walker*, 406 F.3d 114, 121–22 (2d Cir. 2005). "Clearly established Federal law" means "the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Id.* (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002)).

### A.     "Unreasonable Application" of "Clearly Established Federal Law"

A "federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). "A state court decision is an 'unreasonable application' of clearly established federal law 'if the state court identifies the correct governing legal principle from the [Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Howard v. Walker*, 406 F.3d 114, 121–22 (2d Cir. 2005) (quoting *Williams*, 529 U.S. at 413). "Unreasonable" does not mean "erroneous" or

"incorrect." *See Williams*, 529 U.S. at 411. "Unreasonable" also does not mean "unarticulated." *See Harrington v. Richter*, 562 U.S. 86, 98 (2011). The state court does not need to provide a statement of reasons, much less "cite or even be aware of" the Supreme Court's cases under § 2254. *Id.* Thus, a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.* at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).

### B.     Ineffective Assistance of Counsel Standard

*Strickland v. Washington*, 466 U.S. 668 (1984) provides the standard for an ineffective assistance of counsel claim. Hair was required to show to the state habeas court (1) that counsel's conduct "fell below an objective standard of reasonableness" set by prevailing professional norms, and (2) that the shortfall caused prejudice to him. *Id.* at 687–88. The "objective standard of reasonableness" is connected to the "practices and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Hinton v. Alabama*, 143 S. Ct. 1081, 1088 (2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). The petitioner has the burden to overcome the presumption that counsel acted competently. *See Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689). To show prejudice, the petitioner must establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome" of a trial. *Id.*

### C.     Recommendation Not To Testify

The petitioner argues that it was ineffective assistance of counsel not to advise him to testify in support of his self-defense claim. (ECF No. 18 at 3–5.) The respondent is correct that the state habeas court reasonably applied controlling Supreme Court precedent in holding that it

was not ineffective assistance of counsel to advise the petitioner not to testify. The state habeas court said:

> There's also an allegation that the defendant wanted to testify and was prevented from doing so. Again, the Court finds no evidence that in any way Attorney Abbamonte forbade or overrode Mr. Hair's right to decide whether he wanted to testify.
>
> It's true that Mr. Abbamonte did not favor testimony by Mr. Hair. That, however, is a tactical recommendation that makes a great deal of sense. Had he testified, Mr. Hair would have been subject to cross examination. As such, his criminal record, which would have included forgery, would have been brought out before the jury. . . .
>
> The downside of Mr. Hair testifying was significantly greater than any benefit to be obtained by him testifying. Any benefit that Mr. Hair could obtain was available through the use of the statement that did come into evidence at the trial.
>
> So the Court cannot find that the recommendation not to testify was a bad recommendation. The Court finds that the recommendation by Attorney Abbamonte against testifying, in fact, was an appropriate recommendation.
>
> The Court also finds the decision not to testify was made by Mr. Hair.

(ECF No. 29-10 at 72–73.)

The state court reasonably applied "the proper standard for attorney performance," which "is that of reasonably effective assistance." *See Strickland*, 466 U.S. at 687. An attorney's recommendation not to testify "fall[s] squarely within the ambit of trial strategy, and if reasonably made,' cannot support an ineffective assistance claim." *U.S. v. Eisen*, 974 F.2d 246, 265 (2d Cir. 1992). "[C]ounsel's recommendation that a criminal defendant not testify is 'a question of trial strategy that appellate courts are ill-suited to second-guess.'" *Duke v. McGinnis*, No. 99Civ.9731, 2000 WL 382059, at *9 (S.D.N.Y. Apr. 17, 2000) (quoting *U.S. v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)).

"Prevailing norms of practice as reflected in American Bar Association standards . . . are guides to determining what is reasonable, but they are only guides." *Strickland*, 466 U.S. at 688. Whether to testify on his own behalf is a decision that must ultimately be made by a client after consulting with defense counsel. Conn. Rules of Prof'l Conduct R. 1.2(a); *see also* ABA Criminal Justice Standards for the Defense Function 4-5.2 (4th ed.). A criminal defendant should not take the stand lightly, especially where, as here, the defendant has a history of prior convictions. 3 Crim. Prac. Manual § 91:10 (Thomson West 2015) ("Certain defenses, such as . . . self-defense, are intrinsically difficult to mount without the testimony of the defendant, as the jurors' question 'Why couldn't he tell us?' looms larger than life. Depending on the true answer to that question, the wiser choice may still be for the defendant not to testify."). *See also Wilson v. U.S.*, 149 U.S. 60, 66 (1893) ("It is not every one who can safely venture on the witness stand, though entirely innocent of the charge against him."); *Rodriguez v. U.S.*, 286 F.3d 972, 983 (7th Cir. 2002) (holding that a defendant was not "denied his Sixth Amendment right to effective assistance of counsel when his attorney advised him that if he testified, his prior convictions could be used to impeach his testimony.").

"[T]here was ample reason for [Abbamonte] to conclude that the best strategy would be for [Hair] not to take the stand." *Duke*, 2000 WL at *9. Had Hair testified, he would have said that the victim emerged from behind a van, drew a gun, and aimed it at him. (ECF No. 29-9 at 26–29.) The only additional facts that this testimony would have provided that were not already before the jury as a result of his statement to the police and the testimony of Dyce was that the victim emerged from behind a van and that the gun was aimed at the petitioner. (*See id.*)

In addition, were Hair to have taken the stand, he would have exposed himself to damaging cross-examination, particularly into why he did not retreat from the scene when he

11

was capable of doing so. (*Id.* at 52–53.) As Attorney Abbamonte acknowledged during his testimony at the state habeas trial, the petitioner would have been cross-examined about the fact that he was "waiting for" the victim, a cross-examination that would have undermined a central feature of the self-defense argument. (ECF No. 29-8 at 52.) In addition, had the petitioner testified, he would have undoubtedly been impeached with the forgery conviction, damaging his credibility and underscoring his criminal record before the jury.[5] *See* Conn. Code Evid. § 6-7. By relying instead on his police statement, the petitioner was able to tell the jury—without the risk of cross-examination—that he saw that Shawn Jeffries had a gun, that he was "scared for [his] life," that "[i]t was self-defense," and that he feared that Jeffries would shoot him. (ECF No. 29-1 at 2.)

The state habeas court had also reviewed the entire record, including the testimony of Tamara Dyce that the victim had a gun when he went outside, which supported Hair's self-defense claim and corroborated his police statement. (ECF No. 29-6 at 258–59; ECF No. 29-10 at 65.) Further, the petitioner's testimony was not required for the trial court to instruct the jury on the claim of self-defense, which means there was enough evidence in the record to warrant submitting the issue to the jury. (*See* ECF No. 29-6 at 332–38). Therefore, the state habeas court's decision did not involve an unreasonable application of the *Strickland* standard because trial counsel's advice not to testify was reasonable in this case.

### D.    Cross-Examination of Ebony Harper

The petitioner's second basis for his ineffective assistance claim is that his attorney failed to "highlight or otherwise mention" evidence from the victim's post-mortem report that is alleged to be facially inconsistent with the testimony of Ebony Harper, the State's eyewitness to

---

[5] To be sure, the forgery was already in evidence as to the firearm possession charge, but the State judge had limited its use. (ECF No. 29-5 at 6–7; ECF No. 29-6 at 328.)

the shooting. (*See* ECF No. 18 at 3–5.) The issue is whether the state habeas court unreasonably applied the *Strickland* standard in determining that original trial counsel provided "reasonably effective assistance" as to the cross-examination of Ebony Harper in light of the post-mortem report that showed that the petitioner shot the victim in the back. *See Strickland*, 466 U.S. at 687.

Here, too, the state habeas court reasonably applied the Supreme Court's standard for ineffective assistance of counsel. The court said:

> The Court finds that Ebony Harper was satisfactorily cross examined by Attorney Abamonte. . . .
>
> . . . .
>
> What is most problematic for any claim of self-defense is the autopsy report of the victim. The victim suffered two gunshot wounds. The autopsy report does not opine as to which of the two wounds came first. One of the gunshot wounds is to the front . . . .
>
> The fatal wound, the wound that caused Mr. Jefferies to die, entered Mr. Jefferies' back . . . . This Court finds it very difficult to see how a gunshot wound to the back can constitute self-defense.
>
> It was suggested that the first shot was a shot in the abdomen, which would have spun the individual around. . . . The second shot [to the back], clearly, would not have been self-defense.
>
> If the gunshot wounds came in the other order, where the shot [to the back was first] . . . it would clearly indicate that Mr. Jefferies was moving away from the [the petitioner], in this case, Mr. Hair, and that the second shot would have been inflicted after he had been rendered unable to be aggressive. Either way, the argument of self-defense was extraordinarily weak.

(ECF No. 29–10 at 70–72.)

A lawyer's decision not to highlight evidence that could significantly damage the defendant's case, even if that evidence could impeach a witness, is not constitutionally ineffective assistance if "as is typically the case, the lawyer has a reasonable justification for the decision." *See Greiner v. Wells*, 417 F.3d 305, 319–324 (2d Cir. 2005) (declining to "fault [an

attorney] for refusing to introduce evidence . . . that . . . would have opened the door to a prosecution line of inquiry harmful to the defense"); *Sacco v. Cooksey*, 214 F.3d 270, 272, 274–75 (2d Cir. 2000) (no ineffective assistance of counsel in a murder trial when defense counsel did not use a telephone conversation that may have supported the defendant's claim that a key prosecution witness was in fact the murderer because the conversation indicated that the witness "had nothing to do" with the victim's death); *Lynn v. Bliden*, 443 F.3d 238, 250–51 (2d Cir. 2006) (no ineffective assistance of counsel when defense counsel did not argue before the jury or cross-examine a witness who identified the defendant about whether the witness initially told the police that he could not identify the defendant because his initial statement was motivated by fear for his family's safety and the lawyer attacked the credibility of the witness in other ways.); *see also Eisen*, 974 F.2d at 265 ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are similarly strategic in nature," which "'if reasonably made,' cannot support an ineffective assistance claim.") (quoting *U.S. v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987)).

Abbamonte had good reason not to cross-examine Ebony Harper about the post-mortem report because the report showed that his client shot the victim in the back. (ECF No. 29-10 at 70–72.) Even if the post-mortem report is inconsistent with Harper's testimony that she saw the petitioner shoot the victim (ECF No. 29-5 at 196; ECF No. 29-6 at 197–99), the state habeas court nevertheless reasonably applied *Strickland*'s "reasonably effective assistance" standard in determining that original trial counsel had a reasonable justification for the decision not to use the post-mortem report in cross-examining Harper. Stressing the report on cross-examination may only have reinforced to the jury that Hair shot the victim in the back and was therefore able to retreat from danger. (*See* ECF No. 29-9 at 52–53; ECF No. 29-10 at 70–72.) *See also Sacco*,

14

214 F.3d at 774–75 ("Because there was a significant potential downside to the introduction of this evidence, trial counsel's decision to avoid its admission was objectively reasonable.").

Further, trial counsel attacked Harper's credibility without drawing attention to the fact that his client shot the victim in the back, which raising the post-mortem report would have done. (*See, e.g.*, ECF No. 29-6 at 221–24, 229 (addressing Harper's criminal history).) *Cf. Lynn*, 443 F.3d at 250–51 (no ineffective assistance where counsel attacked witness' credibility in ways that did not harm the defendant). Therefore, the state habeas court's application of the *Strickland* standard to trial counsel's decision not to challenge Harper's testimony with the post-mortem report, or otherwise address the report, was not an unreasonable application of federal law.

The petitioner also briefly and without adequate analysis raises the argument that original trial counsel's representation was inadequate because he "might have just forgotten" to question Ebony Harper about the victim's history of violence. (ECF No. 26 at 22.) The state trial court reasonably applied the *Strickland* standard in determining that "Ebony Harper was satisfactorily cross examined by Attorney Abbamonte." (ECF No. 29-10 at 70–72.) First, the petitioner does not explain how the victim's history of violence would have been admissible during cross-examination of Harper. Second, Harper's testimony that *she* was aware of the victim's violent history would not have established that *Hair* knew that the victim had been violent in the past, which would have been relevant to the self-defense claim. (*See* ECF No. 29-6 at 333–38 (trial court's instructions to the jury: "A person is justified in the use of reasonable physical force upon another when he reasonably believes that such force is necessary to protect himself . . . from the use of or imminent use of force by another.").)

**III.    The State Court Reasonably Determined the Facts in Light of the Evidence Presented in the State Court Proceeding.**

The petitioner also argues that the state habeas court's decision was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." (*See* ECF No. 29 at 8, 19 (quoting 28 U.S.C. § 2254(d).) Specifically, the petitioner argues that the state habeas court was unreasonable in finding that "[a]ny benefit that [the petitioner] could [potentially] obtain [by testifying at trial] was available through the use of the [police] statement that did come into evidence at the trial." (*Id.* at 19 (quoting ECF No. 29-10).) The petitioner has the burden to rebut the presumption that the state court's determination of a factual issue is correct by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

According to the petitioner, the state court's finding was unreasonable because the petitioner's trial testimony, had he testified, would have provided an additional benefit that his police statement could not. (*See* ECF No. 29 at 12, 16.) To support this argument, the petitioner points out that the original trial counsel believed that there was nothing in the police statement to show that the victim was shooting at the petitioner or about to use deadly force against him. (*Id.* at 13; ECF No. 29-8 at 33.) The inference that the petitioner apparently wants this Court to draw is that the state habeas court's finding that it was better for Hair not to testify was unreasonable because the petitioner's testimony at his criminal trial would have shown something that the police statement could not: that he was sufficiently in fear for his life at the time of the shooting to support a successful claim of self-defense.

The petitioner's argument takes the state habeas court's finding out of context. Immediately after Hair's trial counsel said that the police statement did not show that the victim was shooting at the petitioner or using deadly force, trial counsel explained that he used Tamara Dyce's testimony that the victim had a gun to show that the victim was about to use deadly force.

(ECF No. 29-8 at 33–34.) Likewise, the petitioner's statement to the police told the jury that the victim had a gun, that the petitioner was "scared for [his] life," that "[i]t was self-defense," that he saw a gun, and that he feared that Jeffries would shoot him. (ECF No. 29-1 at 2.) Had Hair testified, he would have said that the victim emerged from behind a van and aimed a gun at him. ( ECF No. 29-9 at 26–29.)

In makings its decision, the State court said:

It's true that Mr. Abbamonte did not favor testimony by Hair. That, however, is a tactical recommendation that makes a great deal of sense. Had he testified, Hair would have been subject to cross examination. As such, his criminal record, which would have included forgery, would have been brought out before the jury. It would have been named as a felony. The Court is convinced that the trial judge in that case would have allowed that in, because forgery clearly goes to veracity.

The downside of Hair testifying was significantly greater than any benefit to be obtained by him testifying. Any benefit that Hair could obtain was available through the use of the statement that did come into evidence at trial.

So the Court cannot find that the recommendation not to testify was a bad recommendation. . . .

(ECF No. 29-10 at 73.)

Given this record, the petitioner has not shown by clear and convincing evidence that it was unreasonable to conclude that it was better for Hair not to testify given the content of his police statement, his proffered testimony, and the actual testimony of Tamara Dyce. Even if Hair's testimony might have been slightly more compelling on the immediacy requirement of self-defense than his police statement and Dyce's testimony, the state habeas court determined that the potential downside of that testimony outweighed that imagined benefit. As shown above, that determination was reasonable. Thus, this Court will not issue a writ of habeas corpus on the ground that the State court adjudication "resulted in a decision that was based on an

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## IV.   Trial Counsel's Allegedly Deficient Performance Did Not Prejudice the Petitioner.

In any event, the state habeas court also reasonably determined that the petitioner did not show that his original trial counsel's conduct caused him prejudice. *Strickland*, 466 U.S. at 687. "[T]o establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith*, 539 U.S. 510, 535 (2003) (quoting *Strickland*, 466 U.S. at 694).

Although the petitioner's argument is not entirely clear, he claims that there is a reasonable probability that the outcome would have been different if Abbamonte had recommended that the petitioner testify and if Abbamonte had cross-examined Harper regarding the post-mortem report. (ECF No. 29 at 26–36.) He attempts to support this argument with a series of claims. The petitioner argues that the two shots had different trajectories. (*Id.* at 34.) Harper testified that the victim kept his hands in the front pocket of his sweatshirt and the post-mortem report shows a front-entry wound in the victim's abdomen, but there is no injury to the victim's hands, wrists, or forearms. (*Id.* at 31.) The petitioner argues that at least one juror initially must have believed the petitioner's claim of self-defense because the jury asked for re-instruction on the issue from the court. (*Id.* at 34–35.) He says that the "very existence of the jury's note establishes the existence, during deliberations, of disagreement among the members of the jury regarding the factual presence of [an] element of self-defense." (ECF No. 29 at 35.) The petitioner argues that his proffered testimony "potentially explains both the dramatically differing trajectories of the two bullet wounds suffered by the victim, and the absence of any gunshot injuries to the victim's hands, wrists or forearms." (*Id.* at 34 (internal citations omitted).)

18

This record, the petitioner contends, makes it "inescapable that members of the jury at the Petitioner's original . . . trial 'would have had a reasonable doubt respecting guilt." (*Id.* at 34 (quoting *Strickland*, 466 U.S. at 695).)

The state habeas court reasonably determined that there is no "basis to conclude that there is any reason to doubt the reliability of [the] jury verdict." (ECF No. 29-10 at 72.) As discussed above in Part II.D, the state habeas court analyzed the post-mortem report at length. (*Id.* at 70–72.) That report showed that the petitioner shot the victim in the back. (*Id.*) Whether Hair shot the victim in the back before he shot the victim in the front, or vice versa, the court reasonably determined that "the argument of self-defense was extraordinarily weak." (*Id.* at 72–73.)

The state habeas court reasonably applied the *Strickland* prejudice standard in reaching this conclusion. Even if Abbamonte had acted differently, it would not have sufficiently bolstered the weak self-defense claim to give rise to a reasonable probability that the result would have been different. *Wiggins*, 539 U.S. at 535. Even if Harper's testimony was inconsistent with the report as to where the victim's hands were when he was shot in the abdomen, the post-mortem report nevertheless showed that the fatal shot struck the victim in the back. (ECF No. 29-10 at 71.) As the state habeas court noted, if this was the first shot fired, then it would appear that Hair would have been able to retreat because his would-be attacker was turned away from him; if this was the second shot fired, then Hair would still probably have been able to retreat because the shot to the victim's abdomen would likely have incapacitated the victim—and the second shot to the back would have been gratuitous. Cross-examining Harper and presenting the petitioner's testimony would not have prevented the jury from considering the report, and there is not a reasonable probability that they would have returned a verdict of not guilty merely because the victim's arms were not struck by a bullet or because the petitioner

would have said that the victim emerged from behind a van with a gun pointed at him. (*See* ECF No. 29 at 34; ECF No. 29-9 at 52–53.)

Even if I came to a different conclusion than the state habeas court and determined that the state court was "incorrect," I would still deny the Petition because "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. The state habeas court reasonably determined that the cross-examination of Harper was not prejudicial because it pointed out that the post-mortem report was so detrimental to the petitioner's self-defense claim that, regardless of any other evidence, it is difficult to envision how the petitioner's self-defense claim could be successful. (ECF No. 29-10 at 71.) For the same reasons, the court also reasonably determined that the petitioner was not prejudiced by the recommendation not to testify. (*Id.* at 73 ("[a]ny benefit that Mr. Hair could obtain [by testifying] was available through the use of the [police] statement that did come into evidence at the trial.").) The state habeas court's decision identified the correct governing legal principle, and reasonably applied that principle to the facts of the petitioner's case in concluding that there was no "reason to doubt the reliability of [the] jury verdict." (*Id.* at 72.)

V.     **Conclusion**

The Motion to Dismiss, ECF No. 21, is DENIED. The Amended Petition for a Writ of Habeas Corpus, ECF No. 18, is DENIED.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                    November 30, 2015

20